# Grim's Appeal.

Testator devised to one of his sons the whole of his real estate, charged with the payment of $5500, to be equally divided among his other five chil-dren. It was found as a fact that the real estate was of the value of $6600. *Held,* that the testator intended an equal distribution of his estate among his children. *Held further,* that the devisee being the first taker under the will was presumably the favorite of the testator. *Held further,* that the personal property of the testator's estate being insufficient to pay his debts the devise and legacies should abate *pro rata.*

March 6th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, WOODWARD, TRUNKEY and STERRETT, JJ. PAXSON, J. absent.

Appeal from the Orphans' Court of *Lehigh county :* Of January Term 1879, No. 224.

Appeal of Martin Grim from the decree of the court confirming the report of the auditor appointed to audit and resettle the accounts of Abraham Grim, deceased.

Abraham Grim died March 22d 1874, leaving a widow and six children, and a tract of about one hundred and thirty acres of land. By his will he provided as follows :

" To my son, James, now residing on my farm, I give and be-queath the whole of my farms and lands, with the following restrictions: he is to pay for said farm $6000, $1000 to remain as a dower, and the interest to be paid annually to my widow. The rest to be equally divided among .the rest of my children, and

the $1000 which are to remain as dower in my farms shall also equally be divided among my children after the death of my widow, or when she shall in any way forfeit," &c. In a codicil the deceased provided further, as follows, viz. : " My son, James Grim, shall pay over to my other heirs $500 less than $6000, as stated in my will."

The will made no provision for the payment of debts or the distribution of the testator's personal estate. James accepted the devise and took possession of the real estate. On October 14th 1875, Martin Grim, one of the sons, filed a petition in the Orphans' Court which set forth the foregoing facts and averred that although more than a year had elapsed since the testator's death, the $5500, of which petitioner was entitled to one-fifth, had not been paid, and it was therefore prayed that a decree might be made in accordance with what was just, &c. James Grim, who was one of the administrators, filed an answer, and the account was referred to an auditor, who found that the personal property of the testator was insufficient to pay his debts ; that the value of the farm was $6600; and reported that the devise and the legacies must abate, *pro rata* for the payment of the debts. Martin Grim filed exceptions to this report which the court, Longaker, P. J., dismissed, when he took this appeal.

*Butz* and *Schwartz*, for appellant.—Where there is no manifest intention to equalize all the children, devises and legacies do not abate *pro rata :* Loomis's Appeal, 10 Barr 223. Where a devisee accepts land charged with the payment of legacies he is not entitled to contribution from the legacies for the payment of debts : Hoover *v.* Hoover, 5 Barr 351.

*Evan Holben,* for appellee.

Mr. Justice MERCUR delivered the opinion of the court, May 7th 1879.

This contention is between a devisee and a legatee under the will of Abraham Grim, of whom they are sons and heirs. The testator devised to the appellee the whole of his real estate charged with the payment of $5500, the interest on $1000 thereof to be paid to his widow while she continued such, and the residue to be equally divided among his other five children, of whom the appellant is one. It is found as a fact that the real estate was of the value of $6600. Such being the case it indicates that the testator intended an equal distribution of his estate among all his children. The intention is further evinced by the fact that the appellee is the first taker under the will, and is therefore presumed to be the favorite of the testator: McFarland's Appeal, 1 Wright 300 ; Wilson *v.* McKeehan, 3 P. F. Smith 79. Still further, where the meaning

[Grim's Appeal.]

of a devise is uncertain the law will adhere as closely as possible to the general rules of inheritance, and whoever claims against the laws of descent must show a satisfactory written title: Lipman's Appeal, 6 Casey 180; Amelia Smith's Appeal, 11 Harris 9; France's Appeal, 25 P. F. Smith 220. There is no reason to infer that the testator intended to give the appellee less than he gave to each of his other children. He made no disposition of his personal estate, and it was found insufficient to pay his debts. The main question therefore is, whether the legacies shall abate *pro rata* to pay the residue of the debts of the testator? The court below held they should and decreed accordingly. This is assigned for error.

It may be conceded, under the English authorities, that demonstrative legacies, or specific bequests of personalty, payable out of a particular fund, set apart for that purpose, will abate only as against each other in case of a deficiency of assets for the payment of simple contract debts; and also that some of the earlier decisions of this court appear to have assumed that to be the correct rule. In later cases, however, this court has given a reason for modifying the rule which prevails in England, resting, in my opinion, on substantial ground. There lands are not, as here, regarded as general assets for the payment of debts. Hence it was reasonably inferred that an intention existed there, as against simple contract debts, to prefer specific devises over specific legacies. In this state, however, lands have always been assets for the payment of debts whether by simple contract or otherwise. Hence now specific or demonstrative legacies shall not alone be liable to abate; but on a deficiency of personal assets to pay debts, devises are equally liable to abate: Loomis's Appeal, 10 Barr 387; Teas's Appeal, 11 Harris 223; Armstrong's Appeal, 13 P. F. Smith 312; Knecht's Appeal, 21 Id. 333; Snyder's Appeal, 25 Id. 191. It therefore follows, under the established facts, that the legacy of the appellant was liable to abatement *pro rata*. It is unnecessary to consider the other assignments. We discover no error.

Decree affirmed, and appellee dismissed at the costs of the appellant.