## Gerety Estate.

Argued January 9, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Milton J. Kolansky,* for appellant in No. 22.

*James J. Ligi,* with him *Alfred E. Swoyer* and *Jenkins & Ligi,* for appellants in No. 26.

*Clement J. Reap,* for appellee.

OPINION BY MR. JUSTICE LINN, March 25, 1946:

Testatrix, Theresa A. Gerety, died March 27, 1943, leaving a will dated July 30, 1938. After directing the payment of debts and funeral expenses, she gave all her property to Mary McCarty and appointed her executrix.

Letters testamentary were granted to Margaret Mary McCarty apparently on the suggestion that, by Mary McCarty, testatrix meant Margaret McCarty, though Mary was not part of Margaret's name. The Register's action in so granting the letters was not challenged by appeal* to the Orphans' Court. A declaratory judgment proceeding failed: *Gerety Estate,* 349 Pa. 417, 37 A. 2d 792.

The executrix administered and filed her account. Distribution then made it necessary to determine whether testatrix had named a beneficiary who could be identified. On the theory of ambiguity, evidence of circumstances was received and from that evidence it was found that testatrix meant Margaret McCarty; distribution was ordered to be made to her. From that order we have two appeals; one, at number 22, by Mary McCarty and the other at number 26, by a nephew and niece, Walter Gerety and Margaret Carter, next of kin, who claimed on the theory that intestacy resulted from a provision void for uncertainty.

---

* One of the briefs states that next of kin filed a petition for a rule to show cause why the letters testamentary should not be revoked, but withdrew the petition.

The evidence of the circumstances in which the will was written leaves no doubt that by Mary McCarty, testatrix intended Margaret McCarty. Was there ambiguity permitting resort to that evidence? Or, more specifically, was there such uncertainty in the designation of the beneficiary intended as to require extrinsic evidence of identification? We must place ourselves in the position of testatrix when she made her will, understanding, as nearly as possible, the circumstances as she understood them and apply her words accordingly: *Glasgow's Estate (No. 1)*, 243 Pa. 613, 617, 90 A. 332; *Harris Estate*, 351 Pa. 368, 381, 41 A. 2d 715.

Among the circumstances shown were the following: Testatrix was an aged spinster who for many years resided in a certain house in Honesdale, Wayne County; the only other member of the household was Margaret McCarty. When testatrix made her will in 1938, she had no surviving relative named Mary McCarty. The Mary McCarty, appellant at number 22, who claimed under the will, was not related to testatrix; she was an acquaintance residing in another county who made occasional calls at the joint home of testatrix and Margaret McCarty "primarily to visit" Margaret McCarty.

Testatrix had a sister, who died in 1903, the wife of Charles A. McCarty, Margaret's brother. During Charles McCarty's lifetime, the testatrix was his secretary; on the death of his wife (testatrix's sister) testatrix lived in Mr. McCarty's home with his two sisters, one of them Margaret McCarty, appellee, and the other named Mary McCarty. Both this Mary McCarty and her brother Charles A. McCarty, died in 1931; thereafter, testatrix and Charles's sister Margaret, continued to live in the same home that had formerly been Charles A. McCarty's home. Charles A. McCarty had left the bulk of his estate to Miss Gerety, his deceased wife's sister, who was younger than his sister Margaret. It is clear, then, that in 1938, when testatrix made her will, Mary Gerety McCarty, her sister, and Mary McCarty,

her sister-in-law, had long been dead and that she had no living relative named Mary McCarty; that the surviving tie with Charles A. McCarty, deceased, from whom the property came, was his sister Margaret, who for many years was the only other member of the household of testatrix.

The will was drawn by James A. Scanlon, a lawyer of Scranton, who testified that he had known testatrix and had occasion to see her in her home about some claim due to the estate of Charles McCarty, which was payable to Miss Gerety; that while in her home on that mission, she instructed him to draw for her a "New will," leaving all her property to Margaret McCarty whom he described as "the woman I had just met downstairs;" ". . . . that this woman Charles McCarty's sister, who was downstairs, should get everything." He returned to his office in Scranton, drew the will, and returned to Miss Gerety's home in Honesdale; he did not recall whether he read the will to her before she signed it. She gave the will to him to keep for her. At the trial he identified Margaret McCarty as the woman he had met in Miss Gerety's home, as the beneficiary intended; he could not explain why he used the name Mary instead of Margaret in describing her in the will. His evidence is to be considered as showing part of the circumstances.

After Miss Gerety's death, there was found in her home in a room called the "office" an envelope endorsed in her handwriting, "Will of Theresa A. Gerety, Margaret McCarty, Executrix." In the envelope were a key to her safe deposit box and a card on which she had written "Will is at office of James Scanlon, Atty, Scranton, Pa. M. J. Martin office."

It was not until about two years after Miss Gerety's death that the appellant, Mary McCarty, of Carbondale, Pa., appeared as having identified herself as the Mary McCarty intended and presented a claim, though she had known for a year and a half of the provisions of the will. This Mary McCarty's husband, John McCarty,

testified that he had stated that he "believed that Margaret McCarty was the person intended and that [he] wanted her to receive the estate."

The will did not identify by description or otherwise the Mary McCarty named in it. When the time to distribute arrived, it of course became necessary to determine who should take. In the absence of identification in the will, the name Mary McCarty being insufficient in the circumstances disclosed, an ambiguity or inadequate description presented itself requiring extrinsic evidence to determine the fact: *Miller's Estate,* 26 Pa. Superior Ct. 443; *Morris's Estate,* 76 Pa. Superior Ct. 50; *Byrne's Estate,* 121 Pa. Superior Ct. 550, 184 A. 303; *Worstall's Estate,* 125 Pa. Superior Ct. 133, 190 A. 162; *Wittmer Estate,* 151 Pa. Superior Ct. 274, 277, 30 A. 2d 197; *Brownfield v. Brownfield,* 12 Pa. 136, 144; *Newell's Estate,* 24 Pa. 197, 199; *Root's Estate,* 187 Pa. 118, 40 A. 818; *Metzger's Estate,* 222 Pa. 276, 281, 71 A. 96; *Mizener's Estate,* 262 Pa. 62, 105 A. 46; *Lockwood's Estate,* 344 Pa. 293, 25 A. 2d 168; *Harris Estate,* 351 Pa. 368, 380, 41 A. 2d 715.

We have recited the circumstances in which the testatrix made her will and we all agree that it clearly appears that Margaret McCarty is identified as the beneficiary intended by the testatrix though designated as Mary McCarty.

The next of kin also present a contention based on the evidence Act of 1887, P. L. 158, section 5, clause e, to the effect that Margaret McCarty's evidence should not have been received. She testified to family relationship existing prior to the death of testatrix, substantially all of which was corroborated by other witnesses; the assignment of error does not quote the evidence complained of as required by Rule 26, nor does the brief quote it; the assignment is therefore dismissed though we may add that we have found nothing in the evidence that would support appellants' contention.

Decree affirmed, costs to be paid equally by the three appellants.